```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                         FORT MYERS DIVISION
```

LAZARO COCA PINEDA,

    Petitioner,

v.                        Case No.  2:26-CV-335-JES-FNF

WARDEN, GLADES COUNTY
DETENTION CENTER, et al.,

    Respondents.
_____/

## OPINION AND ORDER

Before the Court are Petitioner Lazaro Coca Pineda's petition for writ of habeas corpus (Doc. 1) and the government's response (Doc. 8). For the below reasons, the Court grants the petition to the extent set forth in this Order.

### I.  Background

Coca Pineda is a citizen of Cuba who entered the United States on October 17, 1995. (Doc. 1 at 3). Following a criminal conviction for possession of stolen property shipped in interstate commerce, he was ordered removed from the United States to Cuba on February 20, 2009. (Doc. 8 at 2; Doc. 1 at 6; Doc. 1-3). Coca Pineda waived appeal, rendering the decision final on that date. (Doc. 8 at 2). Coca Pineda was detained by Immigration and Customs Enforcement (ICE) for 89 days—until May 20, 2009—before he was released on an Order of Supervision. (Id.)

On October 30, 2025, Coca Pineda reported for a routine check-in at the ICE Field Office in Miramar, Florida. (Doc. 1 at 7). During the check-in, ICE took Coca Pineda into custody for the stated purpose of executing his removal order. (Doc. 1 at 7; Doc. 8-2). He was provided a notice of revocation of release. The document stated that "ICE has determined that there is now a significant likelihood of removal in the reasonably foreseeable future." (Doc. 1 at 9). The notice informed Coca Pineda that the removal options included, but were not limited to, attempted removal to a third country. (Doc. 8-3 at 1)

At the time Coca Pineda filed his petition, Respondents had not secured travel documents or otherwise demonstrated that Coca Pineda's removal was likely in the reasonably foreseeable future.

## II.  Discussion

### A.  The Court has jurisdiction to consider Coca Pineda's claims.

Respondents first argue that the Court lacks jurisdiction to consider this petition. (Doc. 8 at 4). They point to a provision that bars courts from hearing certain claims that states:

> Except as provided in this section and notwithstanding any other provisions of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or

2

> execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). But this jurisdictional bar is narrow. "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 482 (1999); see also Jennings v. Rodriguez, 583 U.S. 281, 294 (2018) ("We did not interpret this language to sweep in any claim that technically can be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves."). "When asking if a claim is barred by § 1252(g), courts must focus on the action being challenged." Canal A Media Holding, LLC v. United States Citizenship and Immigration Servs., 964 F.3d 1250, 1258 (11th Cir. 2020).

Respondents also raise the INA's "zipper clause," which states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court should have jurisdiction, by habeas corpus under section 2241 or title 28 or any other habeas corpus provision, by section 1361 or 1651 of such

3

>  title, or by any other provision of law (statutory or nonstatutory), to review such an order or such question of law or fact.

8 U.S.C. § 1252(b)(9). But the zipper clause only applies to claims requesting review of a removal order. See Madu v. U.S. Attorney Gen., 470 F.3d 1362, 1365 (11th Cir. 2006) (holding the INA did not divest the district court of jurisdiction over a § 2241 challenge to detention of the petitioner pending deportation).

Coca Pineda does not challenge the commencement of a proceeding, the adjudication of a case, or the execution of his removal order. Nor does he ask the Court to review the removal order. Rather, he challenges the legality and length of his detention based on procedural deficiencies and under a framework devised by the Supreme Court for district courts to apply. See Zadvydas, 533 U.S. at 682 (stating the Court's limitation on post-removal detention "is subject to federal-court review."). A decision in Coca Pineda's favor would not impair ICE's ability to execute the removal order. The INA does not strip the Court of jurisdiction over this action.

> B. **Coca Pineda's continued detention violates the Supreme Court's framework in Zadvydas v. Davis**.

"Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days." Singh v. U.S. Attorney Gen., 945 F.3d 1310, 1313

4

(11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)). The government must detain the noncitizen during the 90-day removal period, which begins when the removal order becomes administratively final. Id. Detention may continue after the removal period, but not indefinitely.

In Zadvydas, the Supreme Court held that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 700-01 (2001). If removal is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal." Id. at 699. The Court found it unlikely Congress "believed that all reasonably foreseeably removals could be accomplished in [90 days]." Id. at 701. So, "for the sake of uniform administration in the federal courts," it established a "presumptively reasonable period of detention" of six months—the 90-day removal period plus an additional 90 days. Id. Courts use a burden-shifting framework to judge the constitutionality of additional post-removal detention. If, after 180 days, the noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must provide sufficient evidence to show otherwise. Id.

Respondents argue that Coca Pineda's petition is premature because—although he has been detained longer than 180 days in

5

aggregate since his final order of removal—his latest (current) detention has not yet exceeded 180 days. (Doc. 8 at 9–10). They note that Coca Pineda was detained for a second time on October 30, 2025, and he filed this petition only 127 days later. (Id. at 9). In short, they assume that the six-month presumptively reasonable period of detention resets each time a noncitizen is detained. That assumption is inconsistent with Zadvydas because it would effectively allow ICE to detain noncitizens indefinitely and avoid judicial scrutiny by simply releasing and re-detaining them every 180 days. The Zadvydas framework explicitly guards against indefinite detention. 533 U.S. at 682 ("Based on our conclusion that indefinite detention of aliens . . . would raise serious constitutional concerns, we construe the statute to contain an implicit 'reasonable time' limitation").

In 2009, Coca Pineda was detained for 89 days before he was released on an order of supervision. (Doc. 1 at 8.) Now, more than 91 additional days have passed since his re-detention. Because the six-month period for presumptively reasonable detention has expired, Zadvydas's burden-shifting framework applies.

Coca Pineda has carried his initial burden by showing good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. ICE made that determination when it released him in 2009, and it has been unable to remove

6

Coca Pineda in the sixteen intervening years or in the 130 days since his latest detention.  Respondents make no real attempt at rebuttal.  They do not allege that Cuba or any other country has actually agreed to accept Coca Pineda.[1]  Nor do they allege that U.S. officials have contacted any country about accepting Coca Pineda specifically.  Under, Zadvydas this is insufficient to show a realistic likelihood of removal.

### III. Conclusion

The Court finds no significant likelihood that Coca Pineda will be removed in the reasonably foreseeable future.  He is entitled to release from detention under Zadvydas, but he remains subject to the terms of the order of supervision.  If Coca Pineda fails to comply with the conditions of release, he may be subject to criminal penalties—including further detention.  See 8 U.S.C. § 1253(b); Zadvydas, 533 U.S. at 695("[W]e nowhere deny the right of Congress ... to subject [aliens] to supervision with conditions when released from detention, or to incarcerate them where

---

[1] See 8 C.F.R. 241.13(f) ("Factors for consideration [as to whether there is a significant likelihood of removing a detained alien]. The HQPDU shall consider all the facts of the case including, but not limited to, the history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question.").

appropriate for violations of those conditions").

If removal becomes likely in the reasonably foreseeable future, ICE can re-detain Coca Pineda to "assur[e] [his] presence at the moment of removal." Zadvydas, 533 U.S. at 680.

Accordingly, it is hereby

**ORDERED:**

1. Lazaro Coca Pineda's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**.

2. Respondents shall release Coca Pineda within 24 hours of this Order, and they shall facilitate his transportation from the detention facility by notifying his counsel when and where he can be collected.

3. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida on March 10, 2026.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE